UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSHUA CORDLE,

Plaintiff,

v.                                                    CAUSE NO. 3:26-CV-934-HAB-ALT

SGT. NAVARRO NAZ, et al.,

Defendants.

OPINION AND ORDER

Joshua Cordle, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Cordle alleges he was "found in another inmate's cell" at the Indiana State Prison (ISP) on May 26, 2026, at approximately 11:30 PM. ECF 1 at 3. As soon as he was discovered, Sgt. Naz handcuffed Cordle, smashed his face against a steel fence in front of the other inmate's cell, shoved him down the range, and pushed him back into his own cell. Once there, Sgt. Naz started yelling at Cordle and told him he would kill him or have one of his fellow officers do so if he "got into trouble or fired" because of

Cordle's actions. *Id*. Sgt. Naz then began punching Cordle in the face. By this time, additional officers including Sgt. Walton and Correctional Officer Meritage had arrived on the scene. They stood nearby while Sgt. Naz punched Cordle "multiple times" and threatened him again. *Id*. at 4. Sgt. Naz took his vest off and continued assaulting Cordle while he was sitting on his bunk. Cordle's face immediately began swelling, and his vision became cloudy and blurred. At this point, Sgt. Walton and Correctional Officer Meritage pulled Sgt. Naz out of Cordle's cell and locked the door behind him.

Cordle then asked Sgt. Walton if he could receive medical attention for his inured face. Sgt. Walton responded by saying she would call the shift officer, Capt. Tibbles, and would be back soon to take him to medical. Cordle waited for over an hour, but she didn't return. In an effort to get attention, Cordle grabbed a razor blade from his shelf, showed it to an officer on duty, and said, "Look, I'm suicidal & I'm in fear for my life, safety, & well being here in my cell . . . inside this cellhouse." *Id*. at 6.

The officer responded by getting Lt. Williams. Cordle told her he was suicidal and needed to get medical attention for his face. He also informed her he feared for his safety due to Sgt. Naz's threats. She said, "Ok hold on, let me go call medical & Shift Capt. Tibbles & let them know what's going on & what all just happened to you." *Id*. at 7. She returned about three minutes later, handcuffed Cordle, and took him to medical where he spoke with Capt. Tibbles and Nurse Candace. Cordle told Captain Tibbles what had happened, and Capt. Tibbles took photos of Cordle's face. Nurse Candace examined his injuries, took his vitals, and told Cordle she would document his

2

condition. Capt. Tibbles then instructed the officers to take Cordle to a special management cell (SMC) where he remained from May 27, 2026, to June 4, 2026.

During his time in the SMC, Cordle spoke with Intelligence and Investigations (I&I) Officer Haskins and told him what had happened. Cordle let Officer Haskins know he feared for his life and safety because of the threats Sgt. Naz had made. Subsequently, Cordle was "cleared" by I&I to return to his previous cell where he has remained since June 4, 2026. *Id.* at 8.[1] Cordle has sued Sgt. Navarro Naz, Sgt. Walton, Correctional Officer Meritage, Lt. Williams, Warden Ron Neal, and I&I Haskins for monetary damages.[2] He also asks for a "transfer" and to have charges pressed against Sgt. Naz. *Id.* at 16.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotations and citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous

---

[1] Cordle signed his complaint on June 22, 2026, and it was docketed on June 25, 2026.

[2] When asked how many defendants he is suing, Cordle responded with "8," but only six defendants are listed in the caption and subsequent page. *See* ECF 1 at 1–2.

places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force can be warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors are explored when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890.

Here, Cordle alleges he was shoved, pushed, and punched multiple times by Sgt. Naz during an encounter at ISP in late May of 2026. He suffered pain, swelling, and blurred vision as a result. The court must accept the allegations in the complaint as true and take him at his word that he was not displaying threatening/aggressive behavior or resisting orders when the incidents of force described above occurred. *See, e.g., Lewis*, 581 F.3d at 477. Although further investigation may reveal the force used was legitimate under the circumstances, at this preliminary stage—and giving Cordle the benefit of the inferences to which he is entitled—he has stated a plausible Eighth Amendment excessive force claim against Officer Naz.

4

Cordle also claims Officer Naz made verbal threats against him during the assault. While "[t]he line between 'mere' harassment and 'cruel and unusual punishment' is fuzzy," a threat by an officer to kill or commit physical harm against an inmate may be a constitutional violation depending on the circumstances. *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009) (collecting cases and noting that a guard displaying a noose and staring at a prisoner with "evil eyes" fell on the side of harassment, while a guard pointing a gun at an inmate, cocking it, calling him a racial slur, and repeatedly threatening to shoot him could constitute an Eighth Amendment violation). That said, the Seventh Circuit has stressed that "[s]imple or complex, most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) ("fleeting" verbal comments that are "too limited to have an impact" do not violate the Constitution); *see also Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) ("Repugnant words . . . will seldom rise to an Eighth Amendment violation. . . . The Eighth Amendment nevertheless can apply to an extreme case . . .."). Regardless, "[t]he test for what constitutes 'cruel and unusual punishment' is an objective one. It is not the actual fear of the victim, but what a 'reasonable' victim would fear" that counts. *Dobbey*, 574 F.3d at 445.

According to Cordle, Sgt. Naz threatened him twice during the incident, saying, "This is how I feed my family. If I get into any trouble or fired cause of the stunt that I just pulled, he was going to kill me or have one of his fellow officers kill me or do something to me." ECF 1 at 4. Cordle doesn't allege he has received any further threats, which suggests, objectively, that the interaction may have been too fleeting to cause an

impact. *Beal*, 803 F.3d at 358. However, the court will give Cordle the benefit of all reasonable inferences at this early stage and allow him to proceed on this claim against Sgt. Naz as well.

Next, Cordle alleges Sgt. Walton and Correctional Officer Meritage were present during the assault but failed to intervene.

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). This is what has become known as a "failure to intervene" basis for a constitutional violation. *Fillmore v. Page*, 358 F.3d 496 506 (7th Cir. 2004). A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005).

Cordle says Sgt. Walton and Correctional Officer Meritage stood nearby and watched while Sgt. Naz assaulted Cordle "multiple times." He alleges they didn't intervene until after he had been punched in the face repeatedly. While this description is sparse, the court will give Cordle the benefit of the inferences he is entitled to at this stage and infer that both officers had a realistic opportunity to intervene during the alleged assault but failed to do so. Therefore, Cordle will be allowed to proceed against these officers as well.

Cordle has also sued Lt. Williams. Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Even assuming, *arguendo*, that Cordle's medical need was objectively serious, there is no indication Lt. Williams was deliberately indifferent to it. Cordle says she arrived at his cell following the incident after another officer summoned her. When Cordle told her what had happened and that he was feeling suicidal, she left his cell to call Capt. Tibbles and the medical department to alert them to the issue(s). Cordle admits she returned within a mere three minutes and took him straight to medical where he was evaluated by a nurse and was able to speak to Capt. Tibbles. These allegations don't state a claim against Lt. Williams, so she will be dismissed from this lawsuit.

Cordle has sued I&I Officer Haskins and Warden Ron Neal because he was returned to his original cell and denied protective custody after the indecent. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the

risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' [associated with mental health issues] does not necessarily correlate to a 'substantial risk'").

Cordle believes Officer Haskins exhibited deliberate indifference to his safety because he was released from the SMC after eight days, despite having expressed his fear of Sgt. Naz's verbal threats. He further complains because Warden Neal has refused his request for protective custody. However, Cordle admits he was interviewed by Officer Haskins while he was in the SMC, that he provided him with details surrounding the incident, and that he was subsequently "cleared" by I&I to return to his old cell. Importantly, Cordle doesn't allege Officer Haskins or Warden Neal had any *prior* knowledge that Sgt. Naz would assault him, nor does the complaint describe any incidents since he was released back to the general population on June 4, 2026, that would lead Officer Haskins and Warden Neal to reasonably believe there is a credible, imminent, and ongoing threat to his safety. Cordle does allege Sgt. Naz threatened him *during* the assault by saying he would either kill him or have him killed if Sgt. Naz was fired as a result of Cordle's actions, but there is no indication Sgt. Naz was ever

8

disciplined in any way[3] or that further threats—of which Officer Haskins and/or Warden Neal had personal knowledge of—have been issued. Cordle's speculative fear of possible future harm is insufficient to state claims against Officer Haskins or Warden Neal for failing to protect him. These defendants will be dismissed.

As a final matter, Cordle has filed a separate motion for preliminary injunction. ECF 5. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court need not

---

[3] Indeed, in his contemptuously filed motion for preliminary injunction, Cordle alleges that the supervisory custody staff, including Officer Haskins and Warden Neal, are "trying to sweep this serious incident up under the rug so *no one* gets fired etc." ECF 4 at 4 (emphasis added).

simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[4] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully*, 977 F.3d at 613 (quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the

---

[4] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

In his motion, Cordle states he is in "serious fear & danger of my life" for "multiple reasons." ECF 5 at 1. He describes the same May 26–27, 2026, incident of excessive force and the threats issued by Sgt. Naz during it. He reiterates that Sgt. Naz told him he would be killed if he gets fired or into any other trouble due to Cordle's actions. However, he doesn't allege Sgt. Naz has been disciplined in any way and instead insists that the supervisory staff, including Warden Neal, are "trying to sweep this up under the rug so no one gets fired etc." *Id.* at 3. The only new allegation Cordle provides since the incident is that "every c/o that works comes to my cell to check on me." *Id.* He asks the court to have him transferred to protective custody or a new facility.

As set forth in detail above, Cordle's complaint doesn't state any plausible failure to protect claims. Nor does it plausibly allege he is currently in danger of being harmed. *See Gevas*, 798 F.3d at 481 (risk of harm must be both credible and imminent); *see also Klebanowski*, 540 F.3d at 639–40 (general requests for help, expressions of fear, and even prior attacks aren't sufficient). The new allegation Cordle provides in his motion—that every correctional officer comes to his cell to "check" on him—isn't sufficient to warrant preliminary injunctive relief. Accordingly, the motion will be denied. *See Pritzker*, 973 F.3d at 762 ("mere possibility of success [on the merits] is not enough"); *see also Univ. of S. Ind.*, 43 F.4th at 791 (when evaluating a motion for preliminary injunction, the court

11

need not accept all allegations as true or even give the filer the benefit of reasonable inferences in his favor).

For these reasons, the court:

(1) GRANTS Joshua Cordle leave to proceed against Sgt. Navarro Naz in his individual capacity for compensatory and punitive damages for subjecting him to excessive force and verbal death threats from May 26, 2026, at 11:30 PM to May 27, 2026, at 12:01 AM in violation of the Eighth Amendment;

(2) GRANTS Joshua Cordle leave to proceed against Sgt. Walton and Correctional Officer Meritage for failing to protect him from the use of force by Sgt. Naz from May 26, 2026, at 11:30 PM to May 27, 2026, at 12:01 AM in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Lt. Williams, Warden Ron Neal, and I&I Haskins;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sgt. Navarro Naz, Sgt. Walton, and Correctional Officer Meritage at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Navarro Naz, Sgt. Walton, and Correctional Officer Meritage to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(7) DENIES the motion for preliminary injunctive relief (ECF 4).

SO ORDERED on June 29, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT